UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In the Matter of:

**KRIEGER CRAFTSMEN, INC.**

        Debtor

_____/

Case No. GG 20-03157
Chapter 11
Hon. John T. Gregg

**DECLARATION OF TIMOTHY KRIEGER
IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

I, TIMOTHY KRIEGER, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the managing member of Krieger Craftsmen, Inc. (the "**Debtor or KC**"), and I submit this Declaration to assist the Court and other parties in interest in understanding the circumstances that compelled the Debtor to commence its Chapter 11 case and in support of (i) the Debtor's petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and (ii) the relief requested by the Debtor pursuant to various motions filed contemporaneously herewith (collectively, the "**First Day Motions**").

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtor's senior management, financial advisors from Gantry Business Solutions LLC including Dave Distel and Tim Emmitt, my review of relevant documents, and my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and financial affairs. If called upon to testify, I would testify competently to the facts set forth in this Declaration. The Debtor has authorized me to submit this Declaration on its behalf.

3. Further, I have reviewed generally the First Day Motions and affirm that the facts set forth therein are true and correct to the best of my knowledge.

## BACKGROUND

**Corporate Structure.**

4. Krieger Craftsmen, Inc. manufactures plastic injection molds for the automotive, medical, appliance, and consumer products industries.

5. The Debtor is owned 100% by its sole shareholder and director, Timothy Krieger.

**Business Operations.**

6. The company has approximately 16 employees.

7. The Debtor's headquarters are located at 2758- 3 Mile Road, Grand Rapids, MI 49534.

**Business History.**

8. I began in the Plastics, Tool and Die industry in 1984.

9. I became a Journeyman Mold Maker on October 10, 1989.

10. In 1993, I started Tim Krieger Craftsman in the garage at my home and operated under a DBA.

11. In 1995, I established Krieger Craftsmen, Inc., serving as its sole shareholder and director, with the express purpose of manufacturing plastic injection molds for the automotive, medical, appliance, and consumers products industry.

12. In 2016, I started a second business, J-Flex, to produce Electroform Reflex for the automotive industry. J-Flex partnered with Krieger Craftsmen, Inc. to also produce Reflex for other mold businesses around the world.  Krieger Craftsmen, Inc. invested approximately 1.3M for this expansion.  J-Flex failed due to market changes and new technologies, a reduction in the amount of Reflex designed into today's automobiles, and because breaking into the industry as a potential new supplier was much more difficult than anticipated.  Furthermore J-Flex did not have a dedicated Optical Engineer or sales personnel with proper connections into automotive purchasing.

13. At the same time in 2016, Krieger Craftsmen, Inc. expanded into offshore mold building. This expansion was initially very successful and led to an increased staff of 34 and 2017 sales of approximately $6.9M. The same year, Krieger Craftsmen, Inc. expanded operations into Mexico due to an increased level of production there.

14. The 2016 expansions allowed Krieger Craftsmen, Inc. to build multiple tool packages, receive entire assembly/product, and build at the Grand Rapids location and various offshore locations, which resulted in meeting customer budgets for the packages.

15. Krieger Craftsmen, Inc. perceived the future to be strong and invested $1.2M in a 5-axis Grob CNC Machine. The purchase of this machine increased the fixed costs and overextended the businesses liquidity.

16. Further, the effects of the Covid-19 pandemic were detrimental to the Krieger Craftsmen, Inc. business operations. The pandemic led directly to the cancellation and deferrals of various projects that would have provided significant additional revenue to the business, and Covid-19 driven inefficiencies that were only offset by a modest PPP loan.

17. The expansion and purchase of the $1.2M Grob CNC Machine, and investment in J-Flex were mistakes, and with the compounding effect of Covid-19, caused the business to suffer most of the problems that led to seeking bankruptcy relief.

**Business Loans.**

18. Krieger Craftsmen, Inc. obtained the following loans from Chemical Bank, now known as TCF National Bank:

    A. **Loan 801267444: Debtor Line of Credit ("Loan 1")**

        1. On September 6, 2018, Debtor executed a Promissory Note as borrower with the Bank in the original principal amount of $1,200,000.00 ("Note-1"), along with an Asset Based Business Loan Agreement (the "Agreement-1"), designated as Loan No. 801267444 ("Loan 1") to secure funding for Debtor's business operations.

3

2. Loan-1 is secured by a Mortgage granted to Bank dated March 31, 2015, in which Bank was granted a secured interest in certain real property commonly known as 2710 3 Mile Rd., NW Grand Rapids, MI 49534, 2720 3 Mile Rd., NW, Grand Rapids, MI 49534 and 2758 3 Mile Rd., NW, Grand Rapids, MI 49834 ("Property- 1"), as recorded on April 2, 2015 as Instrument No. 20150403-0026144 in the Kent County, MI Register of Deeds ("Mortgage-1").

3. Loan-1 is further secured and evidenced by an Assignment of Rents dated March 31, 2015, in which Bank was granted an assignment interest in Property-1, as recorded on April 2, 2015 as Instrument No. 20150403-0026145 in the Kent County, MI Register of Deeds ("Assignment-1").

4. Loan-1 is also secured by a Commercial Security Agreement in which Bank was granted a secured interest in all assets and accounts of Debtor as perfected by the filing of UCC-1 Financing Statement(s) with the Michigan Secretary of State (the "Security Agreement 1").

5. Loan-1 is further documented and evidenced by the Commercial Guaranties executed by Jenta, TK and TJK (the "Loan-1 Guarantors") promising the full and prompt repayment of the Loan according to the expressed terms set forth therein (the "Loan-1 Guaranties")

6. Note-1, Agreement-1, Mortgage-1, Assignment-1, Security Agreement-1, Loan 1 Guaranties and any other documents contained in the Bank's file for Loan-1 are collectively referred to hereafter as (the "Loan-1 Documents").

7. As of October 8, 2020, the amount owing on Loan-1 is as follows:

   Principal Balance: $838,081.60
   Interest to 9/30/20: $884.64
   **Estimated Current Net Amount Due: $838,966.24**

B. **Loan 801229766: Debtor Grob Loan ("Loan 2")**

1. On June 30, 2015, Debtor executed a Promissory Note as borrower with Bank in the original principal amount of $1,024,500.00 ("Note-2"), along with a Business Loan Agreement ("Agreement-2"), designated as Loan No. 801229766 ("Loan-2") to secure funding for Debtor's business operations.

2. Loan-2 is also secured by Mortgage-1 and Assignment-1.

3. Loan-2 is also secured by Commercial Security Agreements in which Bank was granted a secured interest in all assets and accounts

of Debtor as perfected by the filing of a UCC-1 Financing Statement with the Michigan Secretary of State (Loan- 2 Security Agreements").

4. Loan-2 is further documented and evidenced by the Commercial Guaranties executed by Jenta, TK and TJK (the "Loan-2 Guarantors") promising the full and prompt repayment of the Loan according to the expressed terms set forth therein (the "Loan-2 Guaranties").

5. Note-2, Agreement-2, Mortgage-1, Assignment-1, Security Agreement-2, Loan-2 Guaranties and any other documents contained in the Bank's file for Loan-2 are collectively referred to hereafter as (the "Loan-2 Documents").

6. As of October 8, 2020, the amount owing on Loan-2 is as follows:

Principal Balance: $564,001.93
Interest to 9/30/20: $1,222.00
**Estimated Current Net Amount Due: $565,223.43[1]**

C. **Loan 801407479: Equipment Loan (Excluding the Grob)("Loan 3")**

1. On September 6, 2018, Debtor as borrower executed a Promissory Note with Bank in the original principal amount of $1,200,000.00 ("Note-3"), along with a Business Loan Agreement ("Agreement-3"), designated as Loan No. 801407479 ("Loan-3") to secure funding for Debtor's business operations.

2. Loan-3 is also secured by Mortgage-1 and Assignment-1.

3. Loan-3 is also secured by Commercial Security Agreements in which Bank was granted a secured interest in all assets and accounts of Debtor as perfected by the filing of a UCC-1 Financing Statement with the Michigan Secretary of State (Loan- 3 Security Agreements").

4. Loan-3 is further documented and evidenced by the Commercial Guaranties executed by Jenta, TK and TJK (the "Loan-3 Guarantors") promising the full and prompt repayment of the Loan according to the expressed terms set forth therein (the "Loan-3 Guaranties").

5. Note-3, Agreement-3, Mortgage-1, Assignment-1, Security Agreement-3, Loan-3 Guaranties and any other documents contained in the Bank's

---

[1] The balance of "Loan 2" is for approximately ½ of the original note amount. The purchase price was financed in part with proceeds of "Loan 2," while the remaining balance was financed by Wells Fargo Bank (originally via Michigan Certified Development Corporation as an SBA backed loan). Debtor's Schedule D reflects the secured balance of the Wells Fargo loan.

file for Loan-3 are collectively referred to hereafter as (the "Loan-3 Documents").

6. As of October 8, 2020, the amount owing on Loan-3 is as follows:

Principal Balance: $1,055,050.93
Interest to 10/8/20: $1,523.96
**Net Amount Due: $1,056,574.89**

**D.**    **Loan 801407495: Jenta, LLC Loan (Debtor is a Co-Obligor)("Loan 4")**

1. On September 6, 2018, TK and Jenta as borrowers executed a Promissory Note with Bank in the original principal amount of $1,720,000.00 ("Note-4"), along with a Business Loan Agreement ("Agreement-4"), designated as Loan No. 801407495 ("Loan-4") to secure funding for the borrowers' business operations.

2. Loan-4 is further documented and evidenced by the Commercial Guaranties executed by Debtor and TJK (the "Loan-4 Guarantors") promising the full and prompt repayment of the Loan according to the expressed terms set forth therein (the "Loan- 4 Guaranties").

3. The Loan 4 debt is itemized for disclosure purposes.  This is the mortgage debt owed on the property.  Timothy Krieger is the sole member of the Debtor.  The Debtor pays rent to Jenta, LLC, and Jenta, LLC pays the building mortgage which is Debtor's headquarters.

4. The balance of Loan 4 is approximately $1,300,000.

19.    **SBA –** The SBA filed a UCC-1 Financing Statement claiming a secured position in the tangible and intangible personal property of the Debtor.  This financing statement represents $149,900 in funds advanced from the SBA.  There is no equity to which the SBA obligation may attach, and Debtor intends to treat this obligation as fully unsecured on its Schedule F.[2]

20.    US. Small Business Administration- UCC Financing Statement was filed on August 19, 2020 against all assets.

**Events Leading To Chapter 11 Filing.**

---

[2] The SBA also issued approximately $382,000 to the Debtor as a PPP loan.  This loan is unsecured and treated on Debtor's Schedule F.

6

21. As noted previously, Krieger Craftsmen, Inc. perceived the future business opportunities to be strong, which led to the purchase of a 5-axis Grob CNC Machine for $1.2M. The purchase of this machine increased the fixed cost and overextended liquidity as sales going forward dipped from $6.9M to $4M.

22. The expansion and purchase of the $1.2M Grob CNC Machine, and investment in J-Flex were events that led in large part to the business problems today.

## FIRST DAY MOTIONS

23. To minimize the adverse effects of the commencement of its chapter 11 case on its business and employees, the Debtor will file several First Day Motions with this Court.

24. I have reviewed the First Day Motions and believe the facts set forth therein are true and correct to the best of my knowledge. I believe that the relief requested in each of the First Day Motions is necessary, appropriate, and is in the best interest of the Debtor's estate, creditors, and other parties in interest.

    A.    **Employee Wages Motion.**

25. In the ordinary course of their businesses, the Debtor incurs payroll obligations to its employees (the "**Employees**"). The Debtor's employs approximately 16 full-time Employees. The Employees perform critical functions for day to day business operations. Payroll is made every Friday.

26. The Debtor's records indicate that the amount of Prepetition Compensation and Prepetition Benefits owing to or on account of any one particular Employee will not exceed the sum of $13,650.00 allowable as a priority claim under Sections 507(a)(4) and (a)(5) of the Bankruptcy Code.

    B.    **Cash Collateral Motion.**

27.     Through the Cash Collateral Motion, the Debtor seeks Court approval to use cash in which the Secured Lenders (as defined in such motion) may assert a lien (the "**Cash Collateral**").  Such cash collateral consists primarily of cash on hand plus the normal income received from the Debtor's customers.

28.     The Debtor has an immediate need for the use of Cash Collateral and will suffer irreparable harm if they are not allowed urgently to use Cash Collateral for, among other things, continuing their regular business operations in an orderly manner; maintaining business relationships with vendors, suppliers, and customers, providing for the payment of employees, and satisfying other working capital, timely payment of post-petition vendors and operational needs-- all of which are vital to preserving and having the opportunity to maintain the Debtor's going-concern value and, ultimately, effectuating a successful course for the benefit of all creditors and parties in interest.

29.     The Debtor intends to use cash collateral consistent with a proposed budget (the "Budget"), as attached. Such Budget covers the expenses necessary to meet the normal operations of the Debtor's businesses and to properly administer the Debtor's bankruptcy estates while in the protections of chapter 11.

30.     As may be set forth in more detail in the Cash Collateral Motion, Debtor is seeking the Lender's authorization to use Cash Collateral.  Utilizing cash collateral will help to consider maintaining the Debtor's business operations, to continually replenish its accounts receivable, and thereby preserve and enhance the value of the Secured Lender's collateral.

C.    **Cash Management Motion.**

31.     As noted in the Cash Management Motion, the Debtor utilizes in the ordinary course of business a centralized cash management system (the "**Cash Management System**")

commonly used by comparably sized companies to collect, transfer, concentrate and disburse funds as needed throughout the Debtor's operations.

32. In the Cash Management Motion, Debtor asks the Court (a) to authorize the Debtor to maintain its existing bank accounts, checks and business forms without being required to close such accounts and forms and re-open new ones, (b) to authorize the Debtor to continue using its centralized cash management system, and (c) to authorize the Debtor's banks to accept and rely upon Debtor's notices and instructions as to which pre-petition checks can be honored pursuant to any order(s) entered by this Court and which checks must be dis-honored.

33. The Debtor's Cash Management System, or a similar variation of it, has been employed for some time and constitutes an essential business practice. It allows the Debtor to control and monitor corporate funds, to ensure cash availability and to reduce administrative expenses by facilitating the movement of funds. The forced closure and reopening of such accounts and systems would be very costly to the Debtor, significantly disruptive to their operations, and potentially damaging to their business relations with customers, vendors and employees.

### D.     **Utilities Motion.**

34. Any interruption of utility service would severely disrupt and diminish the Debtor's chance for a successful reorganization. Accordingly, the Debtor requests the Court enter an order (a) prohibiting the Utility Companies from altering or discontinuing utility services based upon the chapter 11 filing, and (b) establishing procedures as described in the Utilities Motion for determining requests for assurance of payment.

### E.     **Sales and Use Tax Motion.**

35. The Debtor requires authority to pay any pre-petition License Fees and Trust Fund Taxes that may be owing to the Taxing Authorities or other governmental agencies, to avoid the serious disruption to their reorganization efforts that would result from the nonpayment of such

taxes, including the distractions that could result from liability for nonpayment imposed upon the Debtor's officers and directors. The Debtor requests the Court enter an order to permit such payments.

### F. Claims Deadline Motion.

36. The Debtor requires the ability to timely evaluate, and where necessary, to object to proof of claim in the bankruptcy estate in conjunction with proposing a confirmable plan in this case. In order for the Debtor to reasonably assess all claims and propose a confirmable plan, it is necessary that the universe of claims be identified. Further, due to the shortened deadlines in this Subchapter V case, it is important that the Debtor and its counsel be able to evaluate all claims sufficiently before the deadline for filing a chapter 11 plan. The Debtor requests the Court enter an order to establish the dates by which claims must be filed.

### Conclusion.

37. I believe the relief sought in the First Day Motions is necessary for the Debtor to effectuate a smooth transition into chapter 11 bankruptcy, to avoid irreparable harm to its business and estate, and is in the best interest of the Debtor's creditors, estates, and other stakeholders.

38. Accordingly, for the reasons stated herein and in each of the First Day Motions, I respectfully request that each of the First Day Motions be granted in their entirety, together with such further relief as the Court deems just and proper.

Dated:  October 9, 2020

/s/ Timothy Krieger
Timothy Krieger
President
Krieger Craftsmen, Inc.